IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Weary-Irvin,     :
     Petitioner   :
           :
  v.        :  No. 87 C.D. 2021
           :  Submitted: February 4, 2022
U.S. Foods (Workers' Compensation :
Appeal Board),     :
     Respondent :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS     FILED: May 27, 2022

   Jennifer Weary-Irvin (Claimant) has petitioned this Court to review an adjudication of the Workers' Compensation Appeal Board (Board), affirming the decision of the Workers' Compensation Judge (WCJ) to deny Claimant's Petition for Review of Workers' Compensation Benefits (Review Petition) and grant a Petition to Terminate Workers' Compensation Benefits (Termination Petition) filed by U.S. Foods (Employer).[1]  Upon review, we affirm.

## BACKGROUND

   Claimant was employed as a territorial sales manager for Employer.[2] On January 27, 2017, Claimant was injured in a motor vehicle accident while delivering product to a customer.  Following the accident, Employer issued a Notice

---

[1] The WCJ also denied a Petition to Review Medical Treatment and/or Billing filed by Claimant.  Claimant does not appeal that decision.

[2] Unless stated otherwise, we adopt the factual background for this case from the Decision of the WCJ, entered July 30, 2019, which is supported by substantial evidence of record. *See* WCJ Decision, 7/30/19, at 3-10.

of Temporary Compensation Payable (NTCP) accepting unspecified injuries to multiple body parts. NTCP, 2/16/17 (identifying injuries to "Multiple Body Parts (Including Body Systems & Body Parts)"). The NTCP converted to a Notice of Compensation Payable (NCP) by operation of law.

On March 20, 2018, based on the results of an independent medical examination (IME), Employer filed a Termination Petition, alleging that Claimant was able to return to work. On March 22, 2018, Claimant filed a Review Petition, seeking to amend the description of her accepted work injury to include traumatic monaural hearing loss.

The WCJ held hearings at which both parties presented evidence. For her part, Claimant described initial injuries to her lower torso and extremities but conceded that those injuries had healed. Nevertheless, Claimant testified that she continued to suffer from severe headaches, anxiety, and panic attacks, which required ongoing treatment and prescription medication,[3] and which limited her ability to return to work. In addition, as of October 2017, Claimant noticed tinnitus and loss of hearing in her left ear. Claimant supported her testimony with medical records of her treatments and deposition testimony from concussion specialist, Dr. Michael Collins, Ph.D. In particular, Dr. Collins opined that Claimant continued to suffer symptoms of anxiety from her accident but would benefit from a return to work.

In support of its Termination Petition, Employer presented deposition testimony from neurologist Dr. John Talbott, M.D., who conducted an IME of

---

[3] Claimant testified to various treatments and that she had been prescribed Clonazepam to treat her anxiety. Notes of Testimony (N.T.), 5/17/18, at 30. However, her treating physician indicated that she no longer took this medication. Dep. of Dr. Collins, 3/4/19, at 11 ("She's now off her anxiety meds, which I don't recommend.").

Claimant in January 2018. According to Dr. Talbott, Claimant had suffered a mild concussion in her accident but had recovered fully and could return to work. Further, upon viewing surveillance video evidence compiled by Employer, Dr. Talbott opined that Claimant could not lead her physically active life if she continued to experience symptoms of post-concussive syndrome. Addressing Claimant's Review Petition, Employer submitted the results of a second IME, conducted by Dr. Douglas Chen, M.D., F.A.C.S. in November 2018. Dr. Chen confirmed that Claimant suffered left-side hearing loss but found it unrelated to Claimant's motor vehicle accident.

After considering the evidence, the WCJ granted the Termination Petition. While the WCJ recognized that the medical testimony from Dr. Collins and Dr. Talbott was similar, the WCJ found the opinion of Dr. Talbott more credible and persuasive. *See* WCJ Decision, 7/30/19, at 9. Accordingly, the WCJ concluded that Employer had met its burden to establish that Claimant had fully recovered from her injuries and could return to work. *Id.* at 10-11. Regarding the Review Petition, the WCJ credited the medical opinion of Dr. Chen, found no evidence that Claimant's hearing loss was related to her motor vehicle accident, and concluded that she had failed to demonstrate entitlement to amend the description of her accepted work injuries. *Id.* at 9, 11.

Claimant appealed to the Board, which affirmed. Claimant then petitioned this Court for review.

**ISSUES**

In her first issue, Claimant asserts that the injuries to "multiple body parts" accepted by Employer in the NCP should include post-concussive syndrome.

3

Claimant's Br. at 30.[4]  According to Claimant, the Board erred when it "arbitrarily limit[ed] the scope of [her] injury[.]" *Id.* at 35.

Second, Claimant asserts that there was undisputed evidence that Claimant continues to suffer symptoms of post-concussive syndrome. *See id.* at 36. Noting an employer's burden of proof in a termination petition, Claimant suggests that the testimony of Dr. Talbott did not refute sufficiently the testimony of Claimant and Dr. Collins, nor did it support a finding of Claimant's full recovery. *See id.* at 36-40.  Thus, Claimant concludes, the Board should not have terminated her benefits. *See id.*

In her third issue, Claimant asserts that in granting termination, the Board relied on evidence irrelevant to whether Claimant had recovered from her injuries. *See id.* at 40-43.

Finally, in her fourth issue, Claimant asserts that the Board erred when it failed to recognize that her hearing loss was related to her motor vehicle accident. *Id.* at 43.  While Claimant concedes her burden to prove a compensable hearing loss, Claimant disclaims any responsibility to prove that her "symptom [was] related to [her] work injury and the post-concussive syndrome." *Id.* at 44.  Rather, Claimant suggests, "in the context of a termination petition," her hearing loss "should be considered to be a continuing symptom or a residual of a work injury" until proven otherwise by Employer. *Id.*

## DISCUSSION

In a workers' compensation appeal, our review is limited to determining whether an error of law was committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Bryn*

---

[4] There is considerable overlap in Claimant's arguments supporting her first, second, and third issues. *See* Claimant's Br. at 30-36, 36-40, 40-43.  For clarity, we address them separately.

*Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019) (citation omitted). Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *City of Philadelphia v. Workers' Comp Appeal Bd. (Kriebel)*, 29 A.3d 762 (Pa. 2011) (*Kriebel*).

It is well settled that "the WCJ is the fact[-]finder, and 'it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence.'" *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)). This Court may not reweigh the evidence or the WCJ's credibility determinations. *Id.* Indeed, this Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted).

**1. The Scope of Claimant's Accepted Injuries**

In her first issue, Claimant asserts that the Board arbitrarily limited the scope of her injury, excluding her ongoing symptoms of post-concussive syndrome despite Employer's broad acceptance of injuries to multiple body parts. *See* Claimant's Br. at 30-36. Claimant's assertion does not accurately reflect the WCJ's findings or the Board's affirmance.

The NCP acknowledges the existence of a work injury or injuries. *City of Phila. v. Workers' Comp. Appeal Bd. (Butler)*, 24 A.3d 1120, 1124 (Pa. Cmwlth. 2011) (*Butler*); *see also* Sections 406.1 and 410 of the Workers' Compensation Act

(Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 717.1, 731, respectively.[5]  In a termination proceeding, "[t]he NCP frames the issues." *Butler*, 24 A.3d at 1124.  Thus, a claimant's benefits may not be terminated unless an employer establishes that the claimant has recovered "from each and every injury listed in the NCP." *Id.* (citation omitted); *see also Paul v. Workers' Comp. Appeal Bd. (Integrated Health Servs.)*, 950 A.2d 1101, 1104 (Pa. Cmwlth. 2008).

In this case, the NCP does not specify Claimant's injuries.  However, the WCJ recognized that Claimant's initial diagnoses included "concussion" accompanied by "headaches, fogginess, light sensitivity, dizziness, nausea, cognitive difficulties and emotional lability."  WCJ Decision at 6 (referencing medical records from February 2017).  Thus, it appears that the WCJ viewed this injury as within the scope of injuries acknowledged by the NCP.

In her testimony to the WCJ, Claimant asserted that she continued to suffer symptoms of post-concussive syndrome, including severe headaches, anxiety, and panic attacks.  N.T., 5/17/18, at 32-34.  Dr. Collins opined that these lingering symptoms were related to the concussion she suffered.  Dep. of Dr. Collins at 16.  However, Dr. Talbott disagreed with Dr. Collins' assessment.  Following his physical examination of Claimant, and considering her medical history, the results of various diagnostic tests, and the surveillance evidence demonstrating her ability to engage in an active lifestyle, Dr. Talbott agreed that Claimant had sustained a concussion and post-concussive syndrome but opined that Claimant was fully recovered from those injuries.  Dep. of Dr. Talbott, 12/18/18, at 19-22.

The WCJ specifically credited the medical opinion of Dr. Talbott over that of Dr. Collins, finding that "Claimant [was] fully recovered from all issues

---

[5] Section 406.1 was added by the Act of February 8, 1972, P.L. 25.

6

associated with concussion [and] post-concussive syndrome[.]" WCJ's Decision at 10; *see also* Bd. Op., 1/5/21, at 12-13 (rejecting Claimant's argument that the WCJ had narrowed the scope of her injuries and noting, to the contrary, that the WCJ had not found the testimony of Claimant or Dr. Collins to be credible).[6]

Having reviewed the record, we discern no indication that the WCJ narrowed the scope of accepted injuries to Claimant. Rather, the WCJ appropriately considered evidence of Claimant's concussion and post-concussive syndrome within the framework of injuries acknowledged (in broad terms) by the NCP. *See Butler*, 24 A.3d at 1124; *Paul*, 950 A.2d at 1104. Thus, Claimant's first issue is without merit.

## 2. The Termination of Claimant's Benefits

Claimant further asserts that there was undisputed evidence that Claimant continues to suffer symptoms of post-concussive syndrome. Claimant's Br. at 36. Therefore, according to Claimant, Employer failed to prove her complete recovery, and the termination of her benefits was improper. *See id.* at 36-40. We disagree.

"In a termination proceeding, an employer must prove that all disability related to a claimant's work-related injury has ceased." *Marks v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 898 A.2d 689, 693 (Pa. Cmwlth. 2006); *Butler*, 24 A.3d at 1124. Where a claimant asserts ongoing pain or symptoms, the employer may meet its burden of proof with unequivocal medical testimony that "the claimant is fully recovered [and] can return to work without restrictions[,] and that there are no

---

[6] The WCJ found the testimony of Claimant "credible at times, but somewhat confusing and inconsistent." WCJ Decision at 8. The WCJ did not credit the medical opinion of Dr. Collins. *Id.* at 9 ("I find it difficult to accept Dr. Collins' opinions as credible, when [] Claimant is disregarding his opinions.").

objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Marks*, 898 A.2d at 693 (quoting *Udvari v. Workmens' Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997)).

Based on the medical testimony of Dr. Talbott, the WCJ reasonably concluded that Claimant had fully recovered from her concussion and post-concussive syndrome. *See* WCJ's Decision at 10. We need not revisit Dr. Talbott's testimony in further detail but reiterate that Dr. Talbott identified no objective findings that supported Claimant's claims of ongoing symptoms, and he specifically opined that Claimant had recovered from her concussion and post-concussive syndrome. *See* Dep. of Dr. Talbott at 19-22. Dr. Talbott's credible opinion constitutes substantial, competent evidence to support the WCJ's finding of a full recovery. As such, we conclude that Employer met its burden of proof on the Termination Petition. *Marks*, 898 A.2d at 693; *Butler*, 24 A.3d at 1124.[7]

Moreover, in support of her argument, Claimant merely directs our attention to her own, self-serving testimony, as well as that of her medical expert, Dr. Collins. *See* Claimant's Br. at 39. Not only was this testimony *disputed* by Dr. Talbott, the WCJ found this testimony not credible. *See* WCJ's Decision at 9 ("Claimant's testimony suggests that she is using Dr. Collins' opinions and recommendations that support what she wants to do while disregarding his opinions that do not conform with what she wants to do."). The WCJ's findings are neither arbitrary nor capricious. Thus, we decline to reweigh the evidence or the WCJ's

---

[7] We note further that Claimant's expert, Dr. Collins, opined that Claimant should return to work. WCJ Decision at 8; Dep. of Dr. Collins at 17 ("Number one, get a job. Get back to work."), 27 ("I've been asking her to go back to work for six to eight months, and it just doesn't happen."), 36 (responding to a question whether "the best thing she could possibly do is go back to work," Dr. Collins stated, "We could have started and ended with that, yes.").

8

credibility determinations. *See W. Penn Allegheny Health Sys., Inc.*, 251 A.3d at 475; *Hawbaker*, 159 A.3d at 69.

### 3. Whether Relevant Evidence Supports the WCJ's Findings

In her third issue, Claimant presents a series of statements critical of the WCJ's findings, thus challenging the evidentiary basis for the WCJ's finding that Claimant had recovered from her concussion and post-concussive syndrome. *See* Claimant's Br. at 40-43. For example, Claimant disputes the WCJ's finding that the medical testimony of Dr. Talbott and Dr. Collins was similar. *See id.* at 40. Claimant asserts that Dr. Talbott should have considered the treatments and opinions of several other practitioners. *See id.* at 41. Claimant, again, directs our attention to Dr. Collins' opinion that Claimant continues to suffer from anxiety, a lingering symptom of her post-concussive syndrome. *See id.* at 42-43 (suggesting that Dr. Collins' opinion, rendered in March 2019, was more persuasive than Dr. Talbott's opinion, which was based on his IME conducted in January 2018).

Claimant has not presented a cogent legal argument. Rather, these statements are nothing more than attacks on the WCJ's role as fact-finder. Thus, we reject them. *See W. Penn Allegheny Health Sys., Inc.*, 251 A.3d at 475; *Hawbaker*, 159 A.3d at 69.

### 4. Claimant's Review Petition

Finally, we turn to Claimant's argument that the WCJ improperly placed the burden on her, in the context of the termination proceeding, to establish that her hearing loss was a symptom of her work injury and/or post-concussive syndrome. *See* Claimant's Br. at 43-44.[8] We disagree.

---

[8] Claimant does not support her argument with citation to relevant legal authority. *See* Claimant's Br. at 43-44. We caution Claimant that her failure to develop a legal argument properly

A WCJ is permitted to amend the description of a claimant's work injury under Section 413(a) of the Act, 77 P.S. §§ 771-772. Interpreting Section 413(a), our Supreme Court has distinguished between "corrective amendments" and "amendments addressing subsequently-arising medical or psychiatric conditions related to the original injury (or consequential conditions)." *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009). A WCJ may authorize corrective amendments "at any time and in any procedural context[.]" *Id.* at 581. However, "amendments based on consequential conditions are to be made only upon consideration of a specific review petition." *Id.*

A party seeking to amend the NCP has the burden of proving that the acknowledged injury "has increased, decreased, recurred, or has temporarily or finally ceased[.]" 77 P.S. § 772; *see also, e.g.*, *Colagreco v. Workers' Comp. Appeal Bd. (Vanguard Grp., Inc.)*, 232 A.3d 971, 978-79 (Pa. Cmwlth. 2020) (stating that, in filing a review petition, the claimant had the burden to prove that the NCP-acknowledged injury, subacromial bursitis of the right arm, should be amended to include chronic regional pain syndrome of the right upper extremity); *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 705 (Pa. Cmwlth. 2013) (concluding that the employer was not required to prove that the claimant's leg and knee injuries were not related to his work-related ankle sprain but rather were the result of a congenital foot condition).[9]

Further, even in the context of termination proceedings, an employer's burden does not include proving that a claimant is fully recovered from injuries new

---

may result in waiver. *See* Pa.R.A.P. 2119(a); *City of Phila. v. Workers' Comp. Appeal Bd. (Grevy)*, 968 A.2d 830, 836 n.9 (Pa. Cmwlth. 2009).

[9] Consequential conditions are regarded as an increase in disability for purposes of Section 413(a). *Cinram Mfg.*, 975 A.2d at 581 n.4.

and/or distinct from those described in the NCP. *See Harrison*, 78 A.3d at 705; *City of Phila. v. Workers' Comp. Appeal Bd. (Fluek)*, 898 A.2d 15, 19-21 (Pa. Cmwlth. 2006) (*Fluek*). Where no obvious relationship exists between the injury described in the NCP and an alleged condition or injury, the claimant bears the initial burden of proving that the alleged condition or injury is work-related before the burden shifts to the employer to establish full recovery. *See Fluek*, 898 A.2d at 19-21 (concluding that there was "no reasonable nexus or obvious relationship" between a claimant's accepted knee injury and his alleged back injury and, therefore, declining to place the initial burden of proof on the employer).

In this case, there is no assertion by Claimant that the initial NCP was inaccurate or in need of correction. Moreover, the record would not support such an assertion, because Claimant testified that she first noticed left ear hearing loss in October 2017, approximately nine months after her motor vehicle accident. *See* IME Report of Dr. Chen, 11/7/18; *see also* Claimant's Ex. No.7, Records of Dr. Sidney Lipman, M.D., F.A.C.S. (indicating that Claimant first sought treatment for hearing loss in December 2017). Therefore, in filing her Review Petition, it is clear that Claimant sought to amend the NCP to include a subsequently-arising medical condition. Further, there was no obvious relationship between Claimant's original injuries, *i.e.*, concussion and post-concussive syndrome, and her hearing loss. *See* IME Report of Dr. Chen at 2-3 (noting that a complete otolaryngologic exam was normal and that audiometric testing revealed hearing loss in left ear, but concluding that "idiopathic left sided sudden sensorineural hearing loss is not related to a head trauma that occurred [on] January 27, 2017").

Because Claimant did not seek to correct a material defect in the original NCP but rather sought to amend the description of her injuries to reflect a

subsequently-arising medical condition, and because there was no obvious relationship between Claimant's hearing loss and her accident, the WCJ properly placed the burden on Claimant to prove, in the first instance, that her hearing loss was related to her motor vehicle accident. *See Colagreco*, 232 A.3d at 978-79; *Harrison*, 78 A.3d at 705; *Fluek*, 898 A.2d at 19-21.[10]

## CONCLUSION

In summary, we conclude that the WCJ did not narrow the scope of acknowledged injuries to Claimant, thus excluding her ongoing symptoms of post-concussive syndrome. Rather, the WCJ considered evidence of Claimant's concussion and post-concussive syndrome within the framework of injuries acknowledged by the NCP. Based upon substantial medical evidence, the WCJ reasonably concluded that Claimant had fully recovered from her concussion and post-concussive syndrome. Because the WCJ's findings were neither arbitrary nor capricious, we decline to reweigh the evidence or the WCJ's credibility determinations. Finally, because Claimant sought to amend her injuries to include a subsequently-arising medical condition, she was required to prove, in the first instance, that this consequential condition was related to her work injury, and we agree with the WCJ that Claimant did not meet her burden.

For these reasons, we discern no legal error in the WCJ's Decision or the Board's affirmance. Accordingly, we affirm the Board's order.

_____
LORI A. DUMAS, Judge

---

[10] Claimant was unable to meet her burden of proof because the WCJ credited the medical opinion of Dr. Chen. *See* WCJ Decision at 9. Although Claimant submitted treatment records from Dr. Lipman, the WCJ did not credit a diagnosis from him. *See id.*

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Weary-Irvin,     :
     Petitioner   :
            :
    v.        :  No. 87 C.D. 2021
            :
U.S. Foods (Workers' Compensation :
Appeal Board),      :
     Respondent  :

## **O R D E R**

AND NOW, this 27th day of May, 2022, the Order of the Workers' Compensation Appeal Board, dated January 5, 2021, in the above-captioned matter is AFFIRMED.

_____
LORI A. DUMAS, Judge